UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DANIEL HAYNESWORTH,                                    :

     Petitioner,                        :    06 Civ. 13329 (CM) (AJP)

    -against-                                      :   **REPORT AND RECOMMENDATION**

BRIAN C. FISCHER,                                           :

     Respondent.                      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/24/07

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Colleen McMahon, United States District Judge:**

_____Pro se petitioner Daniel Haynesworth seeks a writ of habeas corpus from his

October 17, 2003 conviction in Supreme Court, New York County, of a violation of probation (on

an underlying conviction of third degree criminal sale of a controlled substance), and sentence of 12-

1/2 to 25 years imprisonment. (Dkt. No. 2: Pet. ¶¶ 1-4 & Att.: Haynesworth Aff. ¶ 4.)

Haynesworth's habeas petition asserts that: (1) he was sentenced "to the maximum penalty without

allowing him to withdraw his guilty plea," in violation of federal law (Pet. Att.: Haynesworth Aff.

¶ 13); (2) "he did not knowingly or intelligently waive his right to appeal his conviction, where he

was unaware that [the court] would sentence him beyond his bargained for plea" (Pet. Att.:

Haynesworth Aff. ¶ 16); and (3) the trial court "lacked jurisdiction of his violation proceeding, where

he was in state custody during the period of time the warrant was pending, and [neither] the District

10/24/07
On [illegible] 23, I granted petitioner 45 additional days to object
to this Report. Objections were due 10/8/07. No objections were received
The Report is adopted as the opinion of the Court. On recommendation of Judge
Peck I hereby dismiss the petition. The petition presents no substantial showing of a
denial of a constitutional right. No certificate of appealability shall issue. An appeal would
not be taken in good faith. Colleen McMahon USDJ

2

Attorney nor the Court, made any effort to secure his presence to answer the warrant" (Pet. Att.: Haynesworth Aff. ¶ 22).

For the reasons set forth below, Haynesworth's habeas petition should be <u>DENIED</u>.

## FACTS

### Haynesworth's July 1996 Guilty Plea and Sentencing for Criminal Sale of a Controlled Substance

On July 18, 1996, Daniel Haynesworth – using the "true name" of David Brown and an aka of David Jenkins – pleaded guilty to third degree attempted and actual criminal sale of a controlled substance. (Dkt. No. 9: Dannelly Aff. Ex. A: 7/18/96 Plea Tr. at 2-7.) Haynesworth's plea was to two different indictments. (7/18/96 Plea Tr. at 2-4.) With respect to the second indictment (No. 5264/96), Haynesworth agreed to attend the Helping Hands Ministry drug program. (7/18/96 Plea Tr. at 4.) As to sentencing on Indictment 5264/96, Justice Herbert Adlerberg advised Haynesworth :

> THE COURT: . . . If you successfully complete that [Helping Hands] program, 90 days thereafter, if you stay out of trouble, this mattter will be restored to the calendar. At that point in time, you will be permitted to withdraw this plea of guilty and enter a plea of guilty to a lesser charge where you are going to receive a sentence of probation. Additionally, the People will be filing a bail-jumping information, a Superior Court information on the day of sentence to which, I understand, you will be entering a plea on that case, and you will be receiving a sentence in that case as soon as you complete the program.
>
> Is that understood?
>
> THE DEFENDANT: Yes, sir.

(7/18/96 Plea Tr. at 4-5.)

3

Justice Adlerberg advised Haynesworth that by pleading guilty, he was giving up the rights: to a trial, to be represented by counsel at trial, to force the prosecution to prove his guilt beyond a reasonable doubt, to call witnesses and testify at trial, to cross-examine adverse witnesses at trial, and to remain silent. (7/18/96 Plea Tr. at 9.)

With respect to Indictment 5264/96, Haynesworth admitted that on June 13, 1996, at "about 5:55 in the morning . . . [at] West 47th Street and Eighth Avenue, New York County, by [himself, he] knowingly sold a quantity of a narcotic drug [crack cocaine], again, to somebody who turned out to be an undercover police officer." (7/18/96 Plea Tr. at 6.)

Haynesworth confirmed that the only promise or inducement to pleading guilty was what had been stated on the record as to sentencing, and acknowledged the risks if he violated his probation:

> THE COURT: I have made a promise on the record regarding your sentence and possible sentence in this case.
>
> Has anybody made any other promises to you that we are not aware of?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Has anybody forced you in order to make you plead guilty?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: These are felony convictions. If you are convicted of another felony within the next ten years, once again, you will be looking at mandatory State time.
>
> Do you understand that?
>
> THE DEFENDANT: Yes.

4

(7/18/96 Plea Tr. at 6-8.)

On August 8, 1996, Haynesworth appeared before Justice Adlerberg for sentencing. (Dannelly Aff. Ex. B: 8/8/96 Sentencing Tr. ["8/8/96 S."].) Justice Adlerberg noted, and the prosecutor confirmed, that the State was withdrawing the bail jumping charge. (8/8/96 S. at 2.) Justice Adlerberg sentenced Haynesworth to time served on the first indictment and probation on Indictment 5264/96, with "[t]he condition of probation is that he's to complete a Helping [Hands] Ministry program which is an 18 month program. If he leaves the program without consent that will be a violation of probation." (8/8/96 S. at 2.)

Haynesworth "absconded from the drug program." (Dkt. No. 2: Pet. Att.: Haynesworth Aff. ¶ 11.) On January 7, 1997, a Declaration of Delinquency and warrant were filed as a result of Haynesworth's violation of the terms of his probation. (Dannelly Aff. Ex. C: Declaration of Delinquency; see also Pet. Att.: Haynesworth Aff. ¶ 11.)

**Haynesworth's July 25, 2003 Guilty Plea to the Probation Violation**

On July 25, 2003, Haynesworth appeared before Justice Louis Bart Stone, facing charges of violating probation on three indictments. (Dkt. No. 9: Dannelly Aff. Ex. D: 7/25/03 Replead Tr. at 2.) However, the statute of limitations had run on two of the indictments, as declarations of delinquency had not been executed. (7/25/03 Replead Tr. at 3-6.)

Justice Stone addressed Haynesworth's violation of his probation sentence from his guilty plea to third degree criminal sale of a controlled substance, Indictment 5264/96. (7/25/03 Replead Tr.) Justice Stone informed Haynesworth that by pleading guilty, he was giving up his

H:\OPIN\HAYNESWORTH

5

"right to be represented by [his] attorney in the violation of probation hearing; [his] right not to incriminate [himself]; [his] right to force the People to prove [his] violation of probation by the appropriate level of proof; and any right [he] may have to contest that at a later date." (7/25/03 Replead Tr. at 8.) Haynesworth acknowledged that he understood these rights and also signed a waiver of appeal. (7/25/03 Replead Tr. at 8-9; see also Dannelly Aff. Ex. E: Haynesworth Waiver of Appeal.) Haynesworth told Justice Stone that he was waiving these rights voluntarily and of his own free will. (7/25/03 Replead Tr. at 9.) Haynesworth pled guilty to the probation violation, despite Justice Stone's warnings that the plea "is without promise by this Court of any particular sentence." (7/25/03 Replead Tr. at 6-8.)

Haynesworth admitted that after his August 8, 1996 sentence to probation, he had been "arrested on August 9th, 1997 and convicted on a plea of guilty to the charge of Attempted Robbery, Class D felony, on August 3, 1998." (7/25/03 Replead Tr. at 10-11.)

Haynesworth acknowledged that no promises had been made to induce him to plead guilty to the probation violation:

> THE COURT: Other than what I have put upon the record, which is that I have made no promises to you, has anyone promised you, made any promises to you to get you to plead guilty?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Are you pleading guilty voluntarily and under your own freewill?
>
> THE DEFENDANT: Yes, sir.

(7/25/03 Replead Tr. at 11.) Justice Stone informed Haynesworth:

6

> At this point, you having pled guilty to a violation of probation, it is my function to
> consider where to move on this and how to resentence you on the original crime. In
> that context, it is my understanding that the People have a predicate felony statement.

(7/25/03 Replead Tr. at 12.) Justice Stone instructed the Clerk to arraign Haynesworth on the

predicate felony, and the following colloquy occurred:

> THE CLERK: Mr. Haynesworth, are you also known as David Rayford, David
> Brown, Kenneth Purter, Danny Johnson –
>
> THE DEFENDANT: Yes.
>
> THE CLERK: The District Attorney has filed a statement that you have been
> previously convicted of a felony. It sets forth the date and place of the felony
> conviction.
>
> You, sir, have a copy of that statement and it reads as follows:
>
> That on September 7, 1993, in the Supreme Court of New York County, in
> the State of New York, the defendant was convicted of the felony of Criminal
> Possession of a Controlled Substance in the Fifth Degree.
>
> You have the right to controvert that statement and to file a constitutional
> challenge to that conviction.
>
> Do you, sir, controvert that statement that you have any challenge to that
> conviction?
>
> THE DEFENDANT: No.

(7/25/03 Replead Tr. at 12-13.) Justice Stone found Haynesworth a predicate felon. (7/25/03

Replead Tr. at 13.) Justice Stone adjourned sentencing to give him time to "digest the material" that

had been submitted by both sides. (7/25/03 Replead Tr. at 13-14.)

7

## Justice Stone's October 2003 Sentencing Decision

In a 44 page opinion dated October 16, 2003, Justice Stone explained how he arrived

at Haynesworth's sentence as twelve and one-half to twenty-five years. (See Dkt. No. 9: Dannelly

Aff. Ex. F: Stone Op.) Justice Stone explained that "[t]his defendant came to the attention of this

Court on January 3, 2003, when he was returned on a warrant issued almost six years earlier, on

January 7, 1997, by Hon. Herbert Adlerberg, for his failure to appear at a Violation of Probation

('VOP') hearing" on indictment 5264/96. (Stone Op. at 1.) Justice Stone adjourned the hearing on

that date and appointed counsel for Haynesworth. (Stone Op. at 1.) The prosecutor "advised the

Court that the defendant had far more than three identities," and Justice Stone "granted the People

an adjournment to reconstruct the defendant's criminal record." (Stone Op. at 1-2.) Justice Stone

noted that "[i]t is not clear to the Court what the defendant's name is, as he has used many names"

but "[f]or the sake of an appropriate stopping point, the Court has adopted 'Daniel Haynesworth'

('Haynesworth') as the name for the defendant in th[e] Decision and Judgment. . . ." (Stone Op. at

2.)

After recounting Haynesworth's many offenses (Stone Op. at 3-4), Justice Stone noted

that Haynesworth had continued to avoid being sentenced as a repeat offender by using different

names:

> At some point, Haynesworth seems to have figured out that the system treats
> first offenders gently (as it should there being more hope to divert them from a life
> of crime and less reason to punish them for their criminal persistence). However,
> [Haynesworth] faced the thorny issue of how to continue in a life of crime, yet still
> be able to utilize the kinder and gentler treatment accorded the first felony offender.
> His brilliant solution was to attempt to assume a new identity for each crime so that,

8

as far as the system could ascertain, he would be a first time offender each time he was subsequently arrested, thus hiding his prior record. Haynesworth seems to have discovered the key to how the New York State identification number system ("NYSIS")[1] works. . . .

Over time, Haynesworth succeeded in establishing fifteen separate and distinct NYSID numbers and identities.

In the course of his criminal career, Haynesworth used seventeen significantly different names. . . . He also gave as part of his pedigree information four different social security numbers, six different dates of birth and five different states of birth.

(Stone Op. at 4-6, fns. omitted.)  Justice Stone "sum[med] up Haynesworth's record," pointing out

that:

On twelve different occasions [Haynesworth] has been sentenced to a felony. On one of those occasions, he was sentenced to two different felonies committed over three years apart because he absconded prior to arraignment and had been returned to Court. He was convicted of misdemeanors on seven different occasions, and one of the misdemeanors should have been a felony conviction due to his prior record. Two of the felonies for which he had been convicted were violent felonies and certain other convictions were bargained down from indictments charging other violent felonies. By reason of Haynesworth's creation of new and clean identities, he has avoided sentencing as a predicate felon on ten to twelve separate occasions and as a second violent felony offender on his last conviction. By reason of his fraud, giving him the benefit of assuming that his two felonies sentenced on one day would have been concurrent, Brown has avoided mandatory additional time of slightly less than twenty-five years to slightly over forty-six years, assuming he was always sentenced to the minimum in each case. As the convictions were separate, following earlier

---

[1]    NYSIS is "a computer data base of individuals entering the Criminal Justice System . . . designed to track the criminal records of miscreants to provide information to law enforcement agencies, prosecutors and the courts. . . . For each person having a criminal record, the system maintains a brief statement of such person's arrest, conviction, incarceration and warrant history in the state, together with certain vital information and aliases used. Each person in the database is given a unique 'account' number and information of each subsequent interaction of such person with the Criminal Justice System is entered into the 'account.'"  (Stone Op. at 5.)

9

> convictions and sentences, it would have been unlikely that a Court would have given time concurrent to his earlier cases. Further, it is also not likely, were the courts which sentenced him aware of his full record at the time of their sentencing, that each sentence would have been a minimum sentence.

(Stone Op. at 21-22.)

Justice Stone noted that the "judicial filing of a Declaration of Delinquency," as Justice Adlerberg did on January 7, 1997 for Indictment 5264/96, "suspend[ed] a probationary sentence pending the resolution of any alleged violation of probation." (Stone Op. at 23-24.)

Haynesworth, however, on August 8, 2003 had moved to dismiss this case, claiming that "'the Court has lost jurisdiction of the case because of the unreasonable failure to promptly cause the defendant to appear before the Court for determination of the alleged delinquency,' i.e. the violation of probation to which Haynesworth was sentenced in 1996." (Stone Op. at 24-25.) Haynesworth argued that this would have been an illegal sentence because "'at the time of the sentence, defendant was a predicate felony offender, having had prior felony convictions under different aliases.' . . . [T]he Department of Probation and the District Attorney's office 'failed to use due diligence in bringing him to Court and affording him a hearing on the alleged violation of probation.'" (See Stone Op. at 25.)

Justice Stone noted that the problem he faced was that while he knew

> the sentence of probation is illegal, [yet he] must not proceed to set it aside and re-sentence Haynesworth to a legal sentence instead, the Court is being asked to re-sentence Haynesworth by reason of his violation of the illegal sentence, and then, of course, according to Haynesworth, not to do so because the illegal sentence has, in his view, expired. . . .

10

> This Court finds that it may not sua sponte set aside the sentence of violation
> of probation, and must instead address Haynesworth's contention that he should be
> freed by reason of the failure of due diligence to bring him before the Court in a
> timely manner.

(Stone Op. at 26-27.)

Justice Stone rejected Haynesworth's three arguments concerning alleged lack of due

diligence by the Government. (Stone Op. at 28.) First, Justice Stone found that the fact that

"Haynesworth may have been in Riker's Island at the time the [Violation of Probation] Report was

prepared does not mean that he was incarcerated on January 7, 1997," and in fact, he was no longer

in jail on January 7, 1997. (Stone Op. at 29-30.) Therefore, the information in the Violation of

Probation Report indicating that Haynesworth was at Riker's Island at the time that report was

prepared "does not constitute evidence of any lack of diligence." (Stone Op. at 30.)

Second, Haynesworth pointed to the "'Inmate Stat[u]s Report for Parole Board

Appearance,'" on which one of his aliases was listed as having numerous warrants, as evidence of

lack of due diligence. (Stone Op. at 28.) Justice Stone explained that "the diligence referred to in

CPL § 410.30 is that of the Court." (Stone Op. at 30.) Justice Adlerberg took reasonable,

appropriate and timely action "to cause the defendant to appear before it." (Stone Op. at 30.) Justice

Adlerberg provided Haynesworth with a "prompt hearing following which there were several prompt

actions," including the execution of a Declaration of Delinquency and the issuance of a warrant.

(Stone Op. at 30.) However, Haynesworth "absented himself from the hearing." (Stone Op. at 30.)

"Once a declaration is [filed] and a warrant issued, a Court is not in a position to know where an

11

absconding probationer is and has no employees able to conduct field investigations or look for the missing person." (Stone Op. at 30.)

Third, Justice Stone rejected Haynesworth's argument that at least after January 2001, when his NY SID numbers and names were consolidated, "someone was in a position to know about Haynesworth's situation." (Stone Op. at 28, 32.) Justice Stone stated that it was Haynesworth who made every effort to evade the authorities, although Haynesworth was aware that there were various warrants for his arrest. (Stone Op. at 32-33.) As a result, Justice Stone found that "neither the statute of limitations nor the term of Haynesworth's probation has run and this Court . . . is not prevented from determining whether Haynesworth did violate his probation, and if so, what disposition should ensue." (Stone Op. at 33.)

Finding that "Haynesworth has violated the terms of his August [8], 1996 sentence of Probation," Justice Stone "revoke[d] the sentence of probation imposed on Haynesworth on August [8], 1996." (Stone Op. at 33-35.) Justice Stone noted that the appropriate sentencing range for a predicate felon, which Haynesworth was at the time he committed the crime of third degree criminal sale of a controlled substance, was "from four and one-half to nine years to twelve and one-half to twenty-five years" in prison. (Stone Op. at 34, 38.)

After careful consideration of Haynesworth's past criminal behavior and the then-current case law (Stone Op. at 36-44), Justice Stone found that the appropriate sentence for Haynesworth was twelve and one-half to twenty-five years. (Stone Op. at 44.) Justice Stone felt that

12

"[i]f this sentence cannot be sustained for persons like 'Haynesworth,' with his record, who did the legislature have in mind when they enacted the maximum sentence?" (Stone Op. at 44.)

## October 2003 Resentencing

At the October 17, 2003 resentencing proceeding, Justice Stone reiterated his written decision and sentence in the presence of Haynesworth and his attorney. (Dkt. No. 9: Dannelly Aff. Ex. G: 10/17/03 Resentencing Transcript ["Re-S."] at 2-5.) Justice Stone dismissed Haynesworth's claim, as he did in his written decision and sentence, that the requirements of "Criminal Procedure Law [§] 580.20 indicating that the warden of the prison shall notify promptly the defendants of any detainers or warrants lodged against them," were not met. (10/17/03 Re-S. at 2.)

Defense counsel argued that the written decision hardly addressed the pertinent issues, namely "whether or not the Department of Probation had a responsibility to use due diligence to bring [Haynesworth] in for violation of probation." (10/17/03 Re-S. at 6-7.) Justice Stone responded:

> My opinion deals with the question of diligence. The question of diligence is suspended during such time as you are hiding and have not been reporting to your probation officer. Were you reporting to your probation officer all that time and the probation department failed to take action there would have been a perfectly good argument to have been made that they weren't being diligent. You were aware of the outstanding warrants at the time you were paroled. You took six months to do anything about it. This six months is the only period in which we're talking about of possible rehabilitation. I don't believe it. I believe that you're facing the truth finally and that you're using whatever excuses you could use as you have used in the past to avoid meeting your obligations to society. The number of years that you have owed the state by reason of your continuing fraud if you got the minimum sentence for each of your crimes was between 25 and 48 years. . . . This decision and order relates to three cases which were brought before me. You'll find in the decision and order that by reason of a statute of limitations defense which this court has upheld two of the

II OPINHAYNESWORTH

13

three indictments have been dismissed and that this sentence is solely on the only one left which has not been dismissed which have related to your plea to a Class B felony before the Honorable Justice Adlerberg. And that is the one I'm resentencing you on. . . . When I sentence you on your violation of probation I go back to the underlying plea. The underlying plea is for a B felony. At that point I can sentence you to any terms under that underlying sentence as long as it's legal. A legal sentence for you as a convicted predicate felon for that sentence is four and a half to nine to twelve and a half to 25. In considering what sentence to impose the court is entitled to review your criminal history to decide where you are, what you have done, and your previous convictions, your previous behavior. In this case the court also has your subsequent behavior, your behavior that subsequent to that conviction you were again convicted, this time of a violent crime and jailed. Yes, you were under a different name. As this decision and sentence sets forth in great detail about your history this court believes that it is appropriate in this case to sentence you to twelve and a half to 25 years in jail and I so sentence you. . . .

Please advise your client of his right to appeal.

(10/17/03 Re-S. at 8-11.)

Justice Stone summarily rejected Haynesworth's request to "make the sentence nunc pro tunc to when he was sentenced to probation . . . to perhaps take the five years that he did subsequent to that and have it count towards his present sentence." (10/17/03 Re-S. at 11.)

Defense counsel indicated that Haynesworth would file an appeal. (10/17/03 Re-S. at 11-12.)

## Haynesworth's Direct Appeal

Represented by new counsel (the Center for Appellate Litigation), Haynesworth's appeal to the First Department claimed his "sentence of 12-1/2 to 25 years for a single sale of crack cocaine as part of an ordinary buy-and-bust is excessive and should be reduced in the interest of justice." (Dkt. No. 9: Dannelly Aff. Ex. H: Haynesworth 1st Dep't Br. at 8-13.)

14

Haynesworth submitted a supplemental pro se brief, repeating the excessive sentence claim (Dannelly Aff. Ex. I: Haynesworth Pro Se Supp. 1st Dep't Br. at 21-23), as well as raising three additional claims, that: (1) the "trial court erred in its duty to ensure that [Haynesworth] understood the consequences of plea, and whether the plea was knowingly, intelligently and/or voluntarily made" (id. at 7-10); (2) "the failure to exercise requisite due diligence barred prosecution, and divested trial court of jurisdiction" (id. at 10-17); and (3) "representation provided by counsel was ineffective, where counsel failed to investigate prior to advising [Haynesworth] to enter guilty plea and waive rights to appeal, for failing to subpoena documentary evidence regarding the propriety of plea allocution, or the time period of probationary term imposed" (id. at 17-20).

On October 6, 2005, the First Department affirmed Haynesworth's conviction, holding in full:

> Defendant's written waiver of his right to appeal his violation of probation conviction encompassed his excessive sentence claim. In any event, were we to find otherwise, we would perceive no basis for reducing the sentence, given the seriousness of defendant's criminal record. The resentencing court properly took into consideration the fact that defendant had fraudulently obtained a sentence of probation by concealing his identity and criminal history, as he had done many times before.

> Defendant's ineffective assistance of counsel claim is based on factual assertions outside the record and is thus unreviewable on direct appeal. To the extent the present record permits review, it establishes that defendant received effective assistance under both the state and federal standards.

> Defendant's remaining contentions, including those contained in his pro se supplemental brief, are unpreserved and we decline to review them in the interest of justice. Were we to review these claims, we would reject them.

H:\OPIN\HAYNESWORTH

15

People v. Brown, 22 A.D.3d 237, 237-38, 802 N.Y.S.2d 40, 40-41 (1st Dep't 2005) (citations omitted).

On November 28, 2005, the New York Court of Appeals denied leave to appeal. People v. Brown, 5 N.Y.3d 882, 883, 884, 808 N.Y.S.2d 584, 585, 587 (2005).

## Haynesworth's Habeas Corpus Petition

Haynesworth's pro se habeas petition asserts that: (1) on July 25, 2003, he was sentenced "to the maximum penalty without allowing him to withdraw his guilty plea" (Dkt. No. 2: Pet. Att.: Haynesworth Aff. ¶ 13); (2) "he did not knowingly or intelligently waive his right to appeal his conviction. where he was unaware that [the court] would sentence him beyond his bargained for plea" (Pet. Att.: Haynesworth Aff. ¶ 16); and (3) the trial court "lacked jurisdiction of his violation proceeding, where he was in state custody during the period of time the warrant was pending, and [neither] the District Attorney nor the Court, made any effort to secure his presence to answer to the warrant" (Pet. Att.: Haynesworth Aff. ¶ 22).

## ANALYSIS

## I.     THE AEDPA REVIEW STANDARD[2/]

---

[2/]    For additional decisions by this Judge discussing the AEDPA review standard in language substantially similar to that in this entire section of this Report & Recommendation, see, e.g., Ortiz v. Ercole, 07 Civ. 2178, 2007 WL 2086456 at *8-11 (S.D.N.Y. July 23, 2007) (Peck, M.J.); Lopez v. Miller, 05 Civ. 7060, 2007 WL 2032839 at *4-7 (S.D.N.Y. July 17, 2007) (Peck, M.J.); Morris v. Sears, 06 Civ. 2476, 2007 WL 1875665 at *6-10 (S.D.N.Y. June 29, 2007) (Peck, M.J.); Harrison v. Walsh, 06 Civ. 13328, 2007 WL 1576265 at *12-15 (S.D.N.Y. June 1, 2007) (Peck, M.J.); Brown v. Greene, 06 Civ. 4824, 2007 WL 1379873 at *8-11 (S.D.N.Y. May 11, 2007) (Peck, M.J.); Cassie v. Graham, 06 Civ. 5536, 2007 WL (continued...)

H:OPIN HAYNESWORTH

16

Before the Court can determine whether petitioner is entitled to federal habeas relief,

the Court must address the proper habeas corpus review standard under the Antiterrorism and

Effective Death Penalty Act ("AEDPA").

In enacting the AEDPA, Congress significantly "modifie[d] the role of federal habeas

courts in reviewing petitions filed by state prisoners." Williams v. Taylor, 529 U.S. 362, 403, 120

S. Ct. 1495, 1518 (2000). The AEDPA imposed a more stringent review standard, as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an
> > unreasonable application of, clearly established Federal law, as
> > determined by the Supreme Court of the United States; or

---

2/     (...continued)

506754 at *12-15 (S.D.N.Y. Jan. 31, 2007) (Peck, M.J.); Morales v. Artus, 05 Civ. 3542,
2006 WL 3821488 at *13-16 (S.D.N.Y. Dec. 28, 2006) (Peck, M.J.) (citing my prior
decisions); Bryant v. Fischer, 05 Civ. 0437, 2005 WL 3418282 at *10-14 (S.D.N.Y. Dec. 14,
2005) (Peck, M.J.); Olivo v. Thorton, 05 Civ. 3237, 2005 WL 3292542 at *5-8 (S.D.N.Y.
Dec. 6, 2005) (Peck, M.J.) (citing my prior decisions), report & rec. adopted, 2006 WL
1636742 (S.D.N.Y. June 12, 2006) & 2006 WL 2689889 (S.D.N.Y. Sept. 19, 2006); Boyd
v. Smith, 03 Civ. 5401, 2004 WL 2915243 at *5-7 (S.D.N.Y. Dec. 17, 2004) (Peck, M.J.)
(citing my prior decisions); Montalvo v. Annetts, 02 Civ. 1056, 2003 WL 22962504 at *12-
14 (S.D.N.Y. Dec. 17, 2003) (Peck, M.J.) (citing my prior decisions); Larrea v. Bennett, 01
Civ. 5813, 2002 WL 1173564 at *14 (S.D.N.Y. May 31, 2002) (Peck, M.J.), report & rec.
adopted, 2002 WL 1808211 (S.D.N.Y. Aug. 6, 2002), aff'd, 368 F.3d 179 (2d Cir. 2004);
Mendez v. Artuz, 98 Civ. 2652, 2000 WL 722613 at *22 (S.D.N.Y. June 6, 2000) (Peck,
M.J.), report & rec. adopted, 2000 WL 1154320 (S.D.N.Y. Aug. 14, 2000), aff'd, 303 F.3d
411, 417 (2d Cir. 2002), cert. denied, 537 U.S. 1245, 123 S. Ct. 1353 (2003); Fluellen v.
Walker, 97 Civ. 3189, 2000 WL 684275 at *10 (S.D.N.Y. May 25, 2000) (Peck, M.J.), aff'd,
41 Fed. Appx. 497 (2d Cir. 2002), cert. denied, 538 U.S. 978, 123 S. Ct. 1787 (2003).

17

> (2) . . . was based on an unreasonable determination of the facts in
> light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).[3/]

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have

"independent meaning." Williams v. Taylor, 529 U.S. at 404-05, 120 S. Ct. at 1519.[4/] Both,

however, "restrict[] the source of clearly established law to [the Supreme] Court's jurisprudence."

Williams v. Taylor, 529 U.S. at 412, 120 S. Ct. at 1523.[5/] "That federal law, as defined by the

---

[3/] See also, e.g., Henry v. Poole, 409 F.3d 48, 67 (2d Cir. 2005), cert. denied, 547 U.S. 1040, 126 S. Ct. 1622 (2006); Howard v. Walker, 406 F.3d 114, 121-22 (2d Cir. 2005); Cox v. Donnelly, 387 F.3d 193, 197 (2d Cir. 2004); Dallio v. Spitzer, 343 F.3d 553, 559-60 (2d Cir. 2003), cert. denied, 541 U.S. 961, 124 S. Ct. 1713 (2004); Eze v. Senkowski, 321 F.3d 110, 120 (2d Cir. 2003) ("AEDPA changed the landscape of federal habeas corpus review by 'significantly curtail[ing] the power of federal courts to grant the habeas petitions of state prisoners.'") (quoting Lainfiesta v. Artuz, 253 F.3d 151, 155 (2d Cir. 2001), cert. denied, 535 U.S. 1019, 122 S. Ct. 1611 (2002)).

[4/] Accord, e.g., Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir.), cert. denied, 540 U.S. 1091, 124 S. Ct. 962 (2003); Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000); Lurie v. Wittner, 228 F.3d 113, 125 (2d Cir. 2000), cert. denied, 532 U.S. 943, 121 S. Ct. 1404 (2001); Clark v. Stinson, 214 F.3d 315, 320 (2d Cir. 2000), cert. denied, 531 U.S. 1116, 121 S. Ct. 865 (2001).

[5/] Accord, e.g., Carey v. Musladin, 127 S. Ct. 649, 654 (2006) ("Given the lack of holdings from the Court regarding this [issue], it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"); Yarborough v. Alvarado, 541 U.S. 652, 659, 124 S. Ct. 2140, 2147 (2004) ("We look for 'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'"); Wiggins v. Smith, 539 U.S. 510, 519, 123 S. Ct. 2527, 2534 (2003); Lockyer v. Andrade, 538 U.S. 63, 72, 123 S. Ct. 1166, 1172 (2003) ("Section 2254(d)(1)'s 'clearly established' phrase 'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'"); Howard v. Walker, 406 F.3d at 122; Tueros v. Greiner, 343 F.3d 587, 591 (2d Cir. 2003), cert. denied, 541 U.S. 1047, 124 S. Ct. 2171 (2004); Parsad v. Greiner, 337 F.3d at 181; DelValle v. Armstrong, 306 F.3d 1197, 1200 (2d Cir. 2002); (continued...)

H:\OPIN\HAYNESWORTH

18

Supreme Court, may either be a generalized standard enunciated in the [Supreme] Court's case law

or a bright-line rule designed to effectuate such a standard in a particular context." Kennaugh v.

Miller, 289 F.3d at 42. "A petitioner cannot win habeas relief solely by demonstrating that the state

court unreasonably applied Second Circuit precedent." Yung v. Walker, 341 F.3d at 110; accord,

e.g., DelValle v. Armstrong, 306 F.3d at 1200.

> As to the "contrary to" clause:
>
> A state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases. . . . A state-court decision will also be contrary to [the Supreme] Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.

Williams v. Taylor, 529 U.S. at 405-06, 120 S. Ct. at 1519-20.[5/]

In Williams, the Supreme Court explained that "[u]nder the 'unreasonable application'

clause, a federal habeas court may grant the writ if the state court identifies the correct governing

---

[5/]    (...continued)
Yung v. Walker, 341 F.3d 104, 109-110 (2d Cir. 2003); Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir.), cert. denied, 537 U.S. 909, 123 S. Ct. 251 (2002); Loliscio v. Goord, 263 F.3d 178, 184 (2d Cir. 2001); Sellan v. Kuhlman, 261 F.3d 303, 309 (2d Cir. 2001).

[6/]    Accord, e.g., Brown v. Payton, 544 U.S. 133, 125 S. Ct. 1432, 1438-39 (2005); Bell v. Cone, 543 U.S. 447, 452-53, 125 S. Ct. 847, 851 (2005); Price v. Vincent, 538 U.S. 634, 640, 123 S. Ct. 1848, 1853 (2003); Lockyer v. Andrade, 123 S. Ct. at 1173-74; Hawkins v. Costello, 460 F.3d 238, 242 (2d Cir. 2006), cert. denied, 127 S. Ct. 1267 (2007); Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d 210, 219 (2d Cir.), cert. denied, 126 S. Ct. 215 (2005); Tueros v. Greiner, 343 F.3d at 591; DelValle v. Armstrong, 306 F.3d at 1200; Yung v. Walker, 341 F.3d at 109; Kennaugh v. Miller, 289 F.3d at 42; Loliscio v. Goord, 263 F.3d at 184; Lurie v. Wittner, 228 F.3d at 127-28.

H OPIN\HAYNESWORTH

19

legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the

facts of the prisoner's case." Williams v. Taylor, 529 U.S. at 413, 120 S. Ct. at 1523.[7] However,

"[t]he term 'unreasonable' is . . . difficult to define." Williams v. Taylor, 529 U.S. at 410, 120 S. Ct.

at 1522. The Supreme Court made clear that "an unreasonable application of federal law is different

from an incorrect application of federal law." Id.[8] Rather, the issue is "whether the state court's

application of clearly established federal law was objectively unreasonable." Williams v. Taylor,

529 U.S. at 409, 120 S. Ct. at 1521.[9] "Objectively unreasonable" is different from "clear error."

---

[7] Accord, e.g., Brown v. Payton, 544 U.S. at 141, 125 S. Ct. at 1439; Wiggins v. Smith, 539 U.S. at 520, 123 S. Ct. at 2534-35; Lynn v. Bliden, 443 F.3d 238, 246 (2d Cir. 2006), cert. denied, 127 S. Ct. 1383 (2007); Howard v. Walker, 406 F.3d at 122; Parsad v. Greiner, 337 F.3d at 181.

[8] See also, e.g., Yarborough v. Alvarado, 541 U.S. at 664, 124 S. Ct. at 2150; Wiggins v. Smith, 539 U.S. at 520, 123 S. Ct. at 2535; Price v. Vincent, 538 U.S. at 641, 123 S. Ct. at 1853 ("As we have explained: '[A] federal habeas court may not issue the writ simply because that court concludes that the state-court decision applied [a Supreme Court case] incorrectly.'") (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25, 123 S. Ct. 357, 360 (2002)); Lockyer v. Andrade, 538 U.S. at 75, 123 S. Ct. at 1175; Hawkins v. Costello, 460 F.3d at 243; Lynn v. Bliden, 443 F.3d at 246; Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d at 219; Cox v. Donnelly, 387 F.3d at 197; Eze v. Senkowski, 321 F.3d at 124-25; DelValle v. Armstrong, 306 F.3d at 1200 ("With regard to issues of law, therefore, if the state court's decision was not an unreasonable application of, or contrary to, clearly established federal law as defined by Section 2254(d), we may not grant habeas relief even if in our judgment its application was erroneous.").

[9] Accord, e.g., Yarborough v. Alvarado, 541 U.S. at 664, 124 S. Ct. at 2150; Wiggins v. Smith, 539 U.S. at 520-21, 123 S. Ct. at 2535; Price v. Vincent, 538 U.S. at 641, 123 S. Ct. at 1853; Lockyer v. Andrade, 538 U.S. at 75, 123 S. Ct. at 1174-75; Woodford v. Visciotti, 537 U.S. at 25-27, 123 S. Ct. at 360-61; Mosby v. Senkowski, 470 F.3d 515, 519 (2d Cir. 2006); Hawkins v. Costello, 460 F.3d at 243; Lynn v. Bliden, 443 F.3d at 246; Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Cox v. Donnelly, 387 F.3d at 197; Eze v. Senkowski, 321 F.3d at 125; Ryan v. Miller, 303 F.3d 231, 245 (2d Cir. 2002);
(continued...)

20

Lockyer v. Andrade, 538 U.S. at 75, 123 S. Ct. at 1175 ("The gloss of clear error fails to give proper

deference to state courts by conflating error (even clear error) with unreasonableness."). However,

the Second Circuit has explained "that while '[s]ome increment of incorrectness beyond error is

required . . . the increment need not be great; otherwise, habeas relief would be limited to state court

decisions so far off the mark as to suggest judicial incompetence.'" Jones v. Stinson, 229 F.3d at 119

(quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000)).[10] "[T]he range of reasonable

judgment can depend in part on the nature of the relevant rule." Yarborough v. Alvarado, 541 U.S.

at 663, 124 S. Ct. at 2149.[11]

---

[9]      (...continued)
         Loliscio v. Goord, 263 F.3d at 184; Lurie v. Wittner, 228 F.3d at 128-29.

[10]    Accord, e.g., Lynn v. Bliden, 443 F.3d at 246; Henry v. Poole, 409 F.3d at 68; Howard v.
         Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d at 219; Cox v. Donnelly, 387 F.3d at
         197, 200-01; Eze v. Senkowski, 321 F.3d at 125; Ryan v. Miller, 303 F.3d at 245; Yung v.
         Walker, 341 F.3d at 110; Loliscio v. Goord, 263 F.3d at 184.

[11]    The Supreme Court explained:

         [T]he range of reasonable judgment can depend in part on the nature of the relevant
         rule. If a legal rule is specific, the range may be narrow. Applications of the rule
         may be plainly correct or incorrect. Other rules are more general, and their meaning
         must emerge in application over the course of time. Applying a general standard to
         a specific case can demand a substantial element of judgment. As a result, evaluating
         whether a rule application was unreasonable requires considering the rule's
         specificity. The more general the rule, the more leeway courts have in reaching
         outcomes in case by case determinations.

         Yarborough v. Alvarado, 541 U.S. at 663, 124 S. Ct. at 2149; accord, e.g., Hawkins v.
         Costello, 460 F.3d at 243.

H:\OPIN\JAYNESWORTH

21

Moreover, the Second Circuit has held "that a state court determination is reviewable

under AEDPA if the state decision unreasonably failed to extend a clearly established, Supreme

Court defined, legal principle to situations which that principle should have, in reason, governed."

Kennaugh v. Miller, 289 F.3d at 45.[12]

Under the AEDPA, in short, the federal courts "must give the state court's

adjudication a high degree of deference." Yung v. Walker, 341 F.3d at 109; accord, e.g., Bell v.

Cone, 543 U.S. at 455, 125 S. Ct. at 853; Mosby v. Senkowski, 470 F.3d at 519.

Even where the state court decision does not specifically refer to either the federal

claim or to relevant federal case law, the deferential AEDPA review standard applies:

> For the purposes of AEDPA deference, a state court "adjudicate[s]" a state prisoner's
> federal claim on the merits when it (1) disposes of the claim "on the merits," and (2)
> reduces its disposition to judgment. When a state court does so, a federal habeas
> court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state
> court's decision on the federal claim – even if the state court does not explicitly refer
> to either the federal claim or to relevant federal case law.

Sellan v. Kuhlman, 261 F.3d at 312; accord, e.g., Bell v. Cone, 543 U.S. at 455, 125 S. Ct. at 853

("Federal courts are not free to presume that a state court did not comply with constitutional dictates

---

[12]   Accord, e.g., Tueros v. Greiner, 343 F.3d at 591; Yung v. Walker, 341 F.3d at 109; see
       Yarborough v. Alvarado, 541 U.S. at 665-66, 124 S. Ct. at 2150-51 ("The petitioner contends
       that if a habeas court must extend a rationale before it can apply to the facts at hand then the
       rationale cannot be clearly established at the time of the state-court decision. There is force
       to this argument. Section 2254(d)(1) would be undermined if habeas courts introduced rules
       not clearly established under the guise of extensions to existing law. At the same time, the
       difference between applying a rule and extending it is not always clear. Certain principles
       are fundamental enough that when new factual permutations arise, the necessity to apply the
       earlier rule will be beyond doubt.") (citations omitted).

22

on the basis of nothing more than a lack of citation."); Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365 (2002) (State court not required to cite Supreme Court cases, or even be aware of them, to be entitled to AEDPA deference, "so long as neither the reasoning nor the result of the state-court decision contradicts them."); Mosby v. Senkowski, 470 F.3d at 519; Hawkins v. Costello, 460 F.3d at 243; Lynn v. Bliden, 443 F.3d at 246; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d at 220; Wade v. Herbert, 391 F.3d 135, 140 (2d Cir. 2004) (Appellate Division held claim was "'without merit.'" "Such a summary determination, even absent citation of federal case law, is a 'determination on the merits' and as such requires the deference specified by § 2254." Moreover, "[I]f any reasonable ground was available [for the state court's decision], we must assume that the [state] court relied on it."); Francolino v. Kuhlman, 365 F.3d 137, 141 (2d Cir.) (Where "the Appellate Division concluded its opinion by stating that it had 'considered and rejected defendants' remaining claims,'" AEDPA deference applies.), cert. denied, 543 U.S. 872, 125 S. Ct. 110 (2004); Jenkins v. Artuz, 294 F.3d 284, 291 (2d Cir. 2002) ("In Sellan, we found that an even more concise Appellate Division disposition - the word 'denied' – triggered AEDPA deference.").

Where the state court decision is not clear as to whether it rests on federal law or state procedural law, the Second Circuit in Jimenez v. Walker, 458 F.3d 130, 145-46 (2d Cir. 2006), cert. denied, 127 S. Ct. 976 (2007), instructed that the court must "examine the three clues laid out in Coleman, Quirama and Sellan" - that is, "(1) the face of the state-court opinion, (2) whether the state court was aware of a procedural bar, and (3) the practice of state courts in similar circumstances." Jimenez v. Walker, 458 F.3d at 145 & n.16. Using these three factors, the court should

23

classify the decision as either:

    (1)    fairly appearing to rest primarily on federal law or to be interwoven with federal law or

    (2)    fairly appearing to rest primarily on state procedural law.

Absent a clear and express statement of reliance on a state procedural bar, the Harris presumption applies to decisions in the first category and deems them to rest on the merits of the federal claim. Such decisions are not procedurally barred and must be afforded AEDPA deference as adjudications "on the merits" under 28 U.S.C. § 2254(d). The Harris presumption does not apply to decisions in the second category, which show themselves to rest on an independent state procedural bar. Nor does it apply to decisions in the first category which contain a clear statement of reliance on a state procedural bar. No AEDPA deference is due to these decisions. but the state may successfully assert that habeas relief is foreclosed provided that the independent state procedural bar is adequate to support the judgment and that neither cause and prejudice nor a fundamental miscarriage of justice is shown.

    The effect of these rules is to present federal habeas courts with a binary circumstance: we either apply AEDPA deference to review a state court's disposition of a federal claim or refuse to review the claim because of a procedural bar properly raised. The middle ground . . . does not exist.

Jimenez v. Walker, 458 F.3d at 145-46 (citations & fns. omitted); accord, e.g., Hawkins v. Costello,

460 F.3d at 242 ("In Jimenez v. Walker, we recently made clear that when a state court rejects a

petitioner's claim as either unpreserved or without merit, the conclusive presumption is that the

adjudication rested on the merits."). Of course, "[i]f there is no [state court] adjudication on the

merits [and no procedural bar], then the pre-AEDPA, de novo standard of review applies." Cotto

v. Herbert, 331 F.3d 217, 230 (2d Cir. 2003); see also Jimenez v. Walker, 458 F.3d at 145 n.17.

    Finally, "[i]f [the] court finds that the state court engaged in an unreasonable application of established law, resulting in constitutional error, it must next consider whether such

24

error was harmless." Howard v. Walker, 406 F.3d at 122.

        In addition to the standard of review of legal issues, the AEDPA provides a

deferential review standard for state court factual determinations: "a determination of a factual issue

made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); accord, e.g., Lynn

v. Bliden, 443 F.3d at 246-47; Rosa v. McCray, 396 F.3d at 220. "The petitioner bears the burden

of 'rebutting the presumption of correctness by clear and convincing evidence.'" Parsad v. Greiner,

337 F.3d at 181 (quoting § 2254(e)(1)); accord, e.g., Lynn v. Bliden, 443 F.3d at 246-47.

## II.   HAYNESWORTH'S CLAIMS THAT HE WAS SENTENCED TO THE MAXIMUM SENTENCE WITHOUT ALLOWING HIM TO WITHDRAW HIS GUILTY PLEA AND THAT HE DID NOT KNOWINGLY WAIVE HIS RIGHT TO APPEAL WHERE HE WAS UNAWARE THAT THE COURT WOULD SENTENCE HIM BEYOND HIS BARGAINED FOR PLEA ARE BARRED BY ADEQUATE AND INDEPENDENT STATE LAW GROUNDS[13/]

---

[13/]  For additional decisions by this Judge discussing the adequate and independent state ground doctrine in language substantially similar to that in this entire section of this Report and Recommendation, see, e.g., Morris v. Sears, 06 Civ. 2476, 2007 WL 1875665 at *9-13 (S.D.N.Y. June 29, 2007) (Peck, M.J.); Harrison v. Walsh, 06 Civ. 13328, 2007 WL 1576265 at *15-18 (S.D.N.Y June 1, 2007) (Peck, M.J.); Murray v. Greene, 06 Civ. 3677, 2006 WL 3751294 at *13-17 (S.D.N.Y. Dec. 21, 2006) (Peck, M.J.); McLean v. Conway, 06 Civ. 0807, 2006 WL 2405067 at *16 (S.D.N.Y. Aug. 21, 2006) (Peck, M.J.); Hardison v. Artus, 06 Civ. 0322, 2006 WL 1330064 at *9 (S.D.N.Y. May 16, 2006) (Peck, M.J.), report & rec. adopted, 2006 WL 1763678 (S.D.N.Y. June 23. 2006); Harris v. Woods, 05 Civ. 5582, 2006 WL 1140888 at *34 (S.D.N.Y. May 1, 2006) (Peck, M.J.), report & rec. adopted, 2006 WL 1975990 (S.D.N.Y. July 10, 2006); Olivo v. Thorton, 05 Civ. 3237, 2005 WL 3292542 at *8 (S.D.N.Y. Dec. 6, 2005) (Peck, M.J.) (citing my prior decisions), report & rec. adopted, 2006 WL 1636742 (S.D.N.Y. June 12, 2006); Otero v. Eisenschmidt, 01 Civ. 2562, 2004 WL 2504382 at *17-18 (S.D.N.Y. Nov. 8, 2004) (Peck, M.J.) (citing my prior decisions); Montalvo v. Annetts, 02 Civ. 1056, 2003 WL 22962504 at *18-21 (S.D.N.Y. Dec. 17, 2003) (Peck, M.J.) (citing my prior decisions); Rosario v. Bennett, 01 Civ. 7142, 2002 WL 31852827 at *18- 21 (S.D.N.Y. Dec. 20, 2002) (Peck, M.J.) (citing my prior
(continued...)

25

Haynesworth's first two habeas claims – asserting that he was sentenced "to the maximum penalty without allowing him to withdraw his guilty plea" and that "he did not knowingly or intelligently waive his right to appeal his conviction, where he was unaware that [the court] would sentence him beyond his bargained for plea" (Dkt. No. 2: Pet. Att.: Haynesworth Aff. ¶¶ 13, 16) – previously were raised before the First Department in Haynesworth's pro se supplemental brief. (See pages 13-14 above.)  The First Department held that the claims in Haynesworth's "pro se supplemental brief are unpreserved and we decline to review them in the interest of justice. Were we to review these claims, we would reject them."  People v. Brown, 22 A.D.3d 237, 237, 802 N.Y.S.2d 40, 40-41 (1st Dep't 2005).

## A.    Adequate and Independent State Ground Doctrine

The Supreme Court has made clear that the "adequate and independent state ground doctrine applies on federal habeas," such that "an adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the

---

13/    (...continued)

decisions); Larrea v. Bennett, 01 Civ. 5813, 2002 WL 1173564 at *8-9 (S.D.N.Y. May 31, 2002) (Peck, M.J.), report & rec. adopted, 2002 WL 1808211 (S.D.N.Y. Aug. 6, 2002), aff'd, 368 F.3d 179 (2d Cir. 2004); Mercado v. Portuondo, 99 Civ. 11234, 2000 WL 1663437 at *12 (S.D.N.Y. Nov. 3, 2000) (Peck, M.J.), report & rec. adopted, 2001 WL 987926 (S.D.N.Y. Aug. 29, 2001), aff'd, No. 01-2701, 77 Fed. Appx. 546, 2003 WL 22134571 (2d Cir. Sept. 15, 2003); Owens v. Portuondo, 98 Civ. 6559, 1999 WL 378343 at *5 (S.D.N.Y. June 9, 1999) (Peck, M.J.), aff'd, No. 99-2416, 205 F.3d 1324, 2000 WL 246226 (2d Cir. Feb. 22, 2000).

26

federal claim will result in a fundamental miscarriage of justice." Harris v. Reed, 489 U.S. 255, 262,

109 S. Ct. 1038, 1043 (1989) (citations & internal quotations omitted).[14]

"[I]n order to preclude federal review [under the adequate and independent doctrine],

the last state court to render judgment must 'clearly and expressly state [ ] that its judgment rest[ed]

on a state procedural bar.'" Jones v. Vacco, 126 F.3d at 415 (quoting Glenn v. Bartlett, 98 F.3d at

724). The Second Circuit has made clear that "federal habeas review is foreclosed when a state court

has expressly relied on a procedural default as an independent and adequate state ground, even where

the state court has also ruled in the alternative on the merits of the federal claim." Velasquez v.

Leonardo, 898 F.2d at 9; accord, e.g., Harris v. Reed, 489 U.S. at 264 n.10, 109 S. Ct. at 1044 n.10

("[A] state court need not fear reaching the merits of a federal claim in an alternative holding. By

its very definition, the adequate and independent state ground doctrine requires the federal court to

honor a state holding that is a sufficient basis for the state court's judgment, even when the state court

also relies on federal law.").[15] Thus, "as long as the state court explicitly invokes a state procedural

_____

[14] See also, e.g., Schlup v. Delo, 513 U.S. 298, 314-16, 115 S. Ct. 851, 860-61 (1995); Coleman v. Thompson, 501 U.S. 722, 735, 111 S. Ct. 2546, 2557 (1991); Murray v. Carrier, 477 U.S. 478, 485-88, 496, 106 S. Ct. 2639, 2644-45, 2649-50 (1986); Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997); Garcia v. Lewis, 188 F.3d 71, 76-77 (2d Cir. 1999); Reyes v. Keane, 118 F.3d 136, 138-40 (2d Cir. 1997); Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996), cert. denied, 520 U.S. 1108, 117 S. Ct. 1116 (1997); Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990).

[15] See, e.g., Garcia v. Lewis, 188 F.3d at 77-82; Glenn v. Bartlett, 98 F.3d at 724-25; see also, e.g., Santiago v. People, 97 Civ. 5076, 1998 WL 803414 at *4 (S.D.N.Y. Oct. 13, 1998) ("When the state court rejects a claim both on the merits and because it was waived under the state's procedural law, review of the claim on a federal habeas corpus petition is barred.").

27

bar rule as a separate basis for decision." the adequate and independent doctrine "curtails reconsideration of the federal issue on federal habeas." Harris v. Reed, 489 U.S. at 264 n.10, 109 S. Ct. at 1044 n.10.

**B.    Haynesworth's First Two Habeas Claims Are Procedurally Barred**

Haynesworth raised in his pro se supplemental brief on direct appeal the same claims - that he was sentenced "to the maximum penalty without allowing him to withdraw his guilty plea" in violation of federal law and that "he did not knowingly or intelligently waive his right to appeal his conviction. where he was unaware that [the court] would sentence him beyond his bargained for plea," (Dkt. No. 2: Pet. Att.: Haynesworth Aff. ¶¶ 13. 16) – that he now raises as his first two habeas claims. The First Department addressed Haynesworth's excessive sentence and ineffective counsel claims, and then held that:

> Defendant's remaining contentions, including those contained in his pro se supplemental brief, are unpreserved and we decline to review them in the interest of justice. Were we to review these claims. we would reject them.

People v. Brown, 22 A.D.3d 237, 238, 802 N.Y.S.2d 40, 40-41 (1st Dep't 2005).

State courts are not required to use any particular language:

> We encourage state courts to express plainly, in every decision potentially subject to federal review, the grounds upon which their judgments rest, but we will not impose on state courts the responsibility for using particular language in every case in which a state prisoner presents a federal claim – every state appeal, every denial of state collateral review – in order that federal courts might not be bothered with reviewing state law and the record in the case.

Coleman v. Thompson, 501 U.S. 722, 739. 111 S. Ct. 2546, 2559 (1991).

28

Furthermore, unlike the situation where the state court holds that claims were either

unpreserved or without merit, which the Second Circuit has found is usually too ambiguous to

preclude habeas review,[16/] here the First Department explicitly stated that it found Haynesworth's

claim "unpreserved," People v. Brown, 22 A.D.3d at 238, 802 N.Y.S.2d at 40-41, and the fact that

the First Department also stated the conclusion it would reach on the merits if it was to review this

claim, id., does not change the result. See, e.g., Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 810-

11 & n.4 (2d Cir. 2000) ("where a state court says that a claim is 'not preserved for appellate review'

and then ruled 'in any event' on the merits, such a claim is not preserved"); Glenn v. Bartlett, 98 F.3d

721, 724-25 & n.3 (2d Cir. 1996) (state decision which denied prosecutorial misconduct claim as not

preserved for appellate review represented an independent and adequate state procedural ground even

though court addressed merits of claim "in the interests of justice"), cert. denied, 520 U.S. 1108, 117

S. Ct. 1116 (1997); Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990) (state decision which denied

claims as procedurally barred but then alternatively addressed merits rested on adequate and

independent state grounds); Murray v. Greene, 06 Civ. 3677, 2006 WL 3751294 at *15 n.30

_____

[16/]    See, e.g., Galarza v. Keane, 252 F.3d 630, 637 (2d Cir. 2001) ("We have found a state court's
reliance on a state procedural bar to be ambiguous, and thus refused to invoke a procedural
bar, where . . . the state court rejected defendant's claims on appeal as 'either meritless or
unpreserved.'"); Tankleff v. Senkowski, 135 F.3d 235, 247 (2d Cir. 1998); Reid v.
Senkowski, 961 F.2d 374, 377 (2d Cir. 1992).

29

(S.D.N.Y. Dec. 21, 2006) (Peck, M.J.) (& cases cited therein). Thus, the First Department's decision here unambiguously rested on a state procedural ground.[17]

The Supreme Court has established that "the procedural bar doctrine only precludes habeas review when the state procedural ground is firmly established and regularly followed by the state courts." Simpson v. Portuondo, 01 Civ. 8744, 2002 WL 31045862 at *4 (S.D.N.Y. June 4, 2002) (citing James v. Kentucky, 466 U.S. 341, 348-49, 104 S. Ct. 1830, 1835 (1984)).

Under New York law, "[a]s a general rule points which were not raised at trial may not be considered for the first time on appeal." People v. Thomas, 50 N.Y.2d 467, 471, 429 N.Y.S.2d 584 (1980) (citing C.P.L. § 470.05(2)).[18] Moreover, a party must make a specific protest

---

[17]   The New York Court of Appeals denied Hayneworth's application for leave to appeal. People v. Brown, 5 N.Y.3d 882, 883, 884, 808 N.Y.S.2d 584, 585, 587 (2005). The Supreme Court held in Ylst v. Nunnemaker, 501 U.S. 797, 111 S. Ct. 2590 (1991), with respect to unexplained orders, that federal habeas courts should presume that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." Id. at 803, 111 S. Ct. at 2594. Petitioner has presented no facts to rebut that presumption here.

[18]   C.P.L. § 470.05(2) provides, in relevant part:

> For the purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same. Such protest need not be in the form of an "exception" but is sufficient if the party made his position with respect to the ruling or instruction known to the court, or if in response to a protest by a party, the court expressly decided the question raised on appeal. In addition, a party who without success has either expressly or impliedly sought or requested a particular ruling or instruction, is deemed to have thereby protested the court's ultimate disposition of the matter or
> (continued...)

30

at the time of a claimed error to preserve an issue for appellate review. E.g., People v. Hardy, 4

N.Y.3d 192, 197 n.3, 791 N.Y.S.2d 513, 517 n.3 (2005). Failure to specify the grounds for a claim

of error at the time of an objection (either because an objection is general, or because it specifies a

different ground than that raised on appeal) renders claims not specified unpreserved for appellate

review. E.g., Olivo v. Thorton, 05 Civ. 3237, 2005 WL 3292542 at *10 (S.D.N.Y. Dec. 6, 2005)

(Peck, M.J.) ("Under New York law, a party's failure to specify the grounds for its general objection

also renders its argument unpreserved for appellate review.") (citing N.Y. cases).[19]

"New York courts have held that, in order to preserve a claim that his guilty plea was

involuntarily made, a defendant must either move to withdraw the plea under C.P.L. § 220.60(3) or

---

[18] (...continued)

failure to rule or instruct accordingly sufficiently to raise a question of law with
respect to such disposition or failure regardless of whether any actual protest thereto
was registered.

[19] See also, e.g., People v. Kello, 96 N.Y.2d 740, 743-44, 723 N.Y.S.2d 111, 113 (2001)
(Claim is unpreserved where defendant "never based his trial objection to the 911 tapes on
the Confrontation Clause. Rather, the only issue raised before the trial court was the
erroneous admission of the tapes under our State common-law hearsay rule. . . . The
defendant's failure to raise a Confrontation Clause objection precluded the trial court and
prosecution from considering and, thus, avoiding any constitutional error which . . . differs
from the trial evidence error which was preserved."); People v. Tonge, 93 N.Y.2d 838, 839-
40, 688 N.Y.S.2d 88, 88 (1999) ("a party's failure to specify the basis for a general objection
renders the argument unpreserved for [state appellate] review."); People v. Robinson, 88
N.Y.2d 1001, 1002, 648 N.Y.S.2d 869, 870 (1996) ("to frame and preserve a question of law
reviewable by this Court, an objection or exception must be made with sufficient specificity
at the trial, when the nisi prius court has an opportunity to consider and deal with the asserted
error."); People v. Velasco, 77 N.Y.2d 469, 474, 568 N.Y.S.2d 721, 723 (1991); People v.
Dien, 77 N.Y.2d 885, 886, 568 N.Y.S.2d 899, 900 (1991).

31

move to vacate the judgment of conviction under C.P.L. § 440.10."[20] Snitzel v. Murry, 371 F. Supp. 2d 295, 300-01 (W.D.N.Y. 2004) (citing New York cases); accord, e.g., Larweth v. Conway, No. 04-CV-0050, 2007 WL 1861498 at *4 (W.D.N.Y. June 29, 2007) ("In New York, the 'firmly established and regularly followed rule' for preserving a claim that a guilty plea was involuntarily entered requires a defendant to move to withdraw the plea or to vacate the judgment of conviction.") (citations omitted); People v. Williams, 6 A.D.3d 746, 746, 776 N.Y.S.2d 329, 330 (3d Dep't) ("[D]efendant's challenge to the voluntariness of his [guilty] plea is unpreserved, as he neither moved to withdraw his plea nor to vacate the judgment of conviction, 'a necessary prerequisite to preserving this claim.'") (citations omitted), appeal denied, 3 N.Y.3d 650, 782 N.Y.S.2d 421 (2004); People v. Hughes, 3 A.D.3d 736, 736, 770 N.Y.S.2d 666, 667 (3d Dep't 2004) ("Defendant now appeals contending . . . that he was coerced into entering the [guilty] plea and, therefore, his waiver of appeal should not be enforced. Defendant, however, did not move to withdraw his plea or vacate the judgment of conviction, a necessary prerequisite to preserving this claim."); People v. Harrington, 3 A.D.3d 737, 738, 770 N.Y.S.2d 792, 793 (3d Dep't 2004) ("[H]aving failed to move to withdraw his guilty plea or to demonstrate that he moved to vacate the judgment of conviction on this ground,

---

[20]   C.P.L. § 220.60(3) provides that: "At any time before the imposition of sentence, the court in its discretion may permit a defendant who has entered a plea of guilty to the entire indictment or to part of the indictment, or a plea of not responsible by reason of mental disease or defect, to withdraw such plea, and in such event the entire indictment, as existed at the time of such plea, is restored."

C.P.L. § 440.10 details the situations in which the court may, after the entry of a judgment, "upon motion of the defendant, vacate such judgment."

32

defendant's challenge to the voluntariness of his plea is unpreserved."), appeal denied, 4 N.Y.3d 887, 798 N.Y.S.2d 732 (2005); People v. Urbina, 1 A.D.3d 717, 717, 766 N.Y.S.2d 640, 640 (3d Dep't 2003) ("[S]ince defendant failed to move to withdraw his guilty plea or to vacate the judgment of conviction, his challenge to the voluntariness of his plea is unpreserved for our review."), appeal denied, 1 N.Y.3d 602, 776 N.Y.S.2d 233 (2004); People v. De Berardinis, 304 A.D.2d 914, 915, 757 N.Y.S.2d 641, 643 (3d Dep't) ("[D]efendant's challenge to the voluntariness of her guilty plea is not preserved for our review because she failed to move to withdraw the plea or vacate the judgment of conviction."), appeal denied, 100 N.Y.2d 580, 764 N.Y.S.2d 390 (2003).

Here, Haynesworth never sought to withdraw his guilty plea, nor did he bring any C.P.L. § 440 motion to vacate his conviction. (See pages 7-15 above.) Accordingly, his habeas claim that he was sentenced to the maximum sentence without being allowed to withdraw his guilty plea is barred by an adequate and independent state ground.[21/]

Both the Supreme Court and the Second Circuit have held that the failure to object at trial when required by New York's contemporaneous objection rule, C.P.L. § 470.05, is an adequate and independent state ground. See, e.g., Wainwright v. Sykes, 433 U.S. 72, 86, 90, 97 S.

_____

[21/]    As to Haynesworth's claim that his waiver of appeal was not knowing because he was unaware of the sentence he would receive, the claim really is another attempt to withdraw his guilty plea, and as such is procedurally barred for the reasons stated above. Moreover, during the plea colloquoy, and before Haynesworth signed the waiver of appeal, Justice Stone warned that the plea "is without promise by this Court of any particular sentence." (7/25/03 Replead Tr. at 7; see also id. at 11, quoted at page 5 above.) Finally, Haynesworth cannot show prejudice from his appeal waiver, since the First Department denied all his appeal claims on the merits in the alternative.

33

Ct. 2497, 2506-08 (1977) (contemporaneous objection rule is an adequate and independent state ground); Murray v. Carrier, 477 U.S. 478, 485-92, 497, 106 S. Ct. 2639, 2644-48, 2650 (1986) (same); Franco v. Walsh, 73 Fed. Appx. 517, 518 (2d Cir. 2003) (finding petitioner's claim of an erroneous jury charge procedurally defaulted because "[n]o contemporaneous objection to the charge was lodged, and the Appellate Division found that the issue was therefore unpreserved."); Garcia v. Lewis, 188 F.3d 71, 79 (2d Cir. 1999) ("we have observed and deferred to New York's consistent application of its contemporaneous objection rules") (citing Bossett v. Walker, 41 F.3d 825, 829 n.2 (2d Cir. 1994) (respecting state court's application of C.P.L. § 470.05(2) as adequate bar to federal habeas review), cert. denied, 514 U.S. 1054, 115 S. Ct. 1436 (1995), & Fernandez v. Leonardo, 931 F.2d 214, 216 (2d Cir.) (noting that failure to object at trial constitutes adequate procedural default under C.P.L. § 470.05(2)), cert. denied, 502 U.S. 883, 112 S. Ct. 236 (1991)); Glenn v. Bartlett, 98 F.3d at 724-25 (failure to object constituted adequate and independent state ground); Velasquez v. Leonardo, 898 F.2d at 9 (violation of New York's contemporaneous objection rule is an adequate and independent state ground).[22]

___ ___ ___ ___

[22]   See also, e.g., Figueroa v. Greiner, 02 Civ. 2126, 2002 WL 31356512 at *11-12 (S.D.N.Y. Oct. 18, 2002) (Peck, M.J.) ("The Second Circuit has held that the failure to object at trial when required by New York's contemporaneous objection rule, C.P.L. § 470.05, is an adequate and independent state ground."); Cooper v. LeFevre, No. 94 CV 5958, 1998 WL 386340 at *2 (E.D.N.Y. July 8, 1998) ("[T]he Second Department held that [the petitioner's] claim was unpreserved because] the Petitioner violated the contemporaneous objection rule by failing to 'raise specific objections to the evidence . . . ' he cited in his appeal as having deprived him of a fair trial. . . . This Court finds that the Second Department's basis for denying Petitioner's claim was both independent of the federal question raised by such claim and adequate to support the judgment. As a result, this Court is procedurally barred from (continued...)

34

Because there is an adequate and independent finding by the First Department that

Haynesworth procedurally defaulted on his plea withdrawal claims, Haynesworth would have to

show in his habeas petition "cause for the alleged violation of federal law, or demonstrate that failure

to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson,

501 U.S. at 750, 111 S. Ct. at 2565.[23/] Haynesworth does not allege cause, prejudice or a

fundamental miscarriage of justice.

Thus, Haynesworth's first two habeas claims should be DENIED as procedurally

barred from habeas review by adequate and independent state law grounds.

_____

[22/]   (...continued)

reviewing the merits of Petitioner's claim"); Jamison v. Smith, 94 Civ. 3747, 1995 WL
468279 at *2 (E.D.N.Y. July 26, 1995) ("Courts in this circuit have consistently held that the
failure to object contemporaneously . . . constitutes an adequate and independent basis for
barring habeas review.").

[23/]   See also, e.g., Schlup v. Delo, 513 U.S. 298, 324-27, 115 S. Ct. 851, 865-67 (1995)
(fundamental miscarriage of justice may be demonstrated by showing through "new reliable
evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts,
or critical physical evidence – that was not presented at trial," that "it is more likely than not
that no reasonable juror would have convicted him in light of the new evidence").

35

## III. HAYNESWORTH'S THIRD HABEAS CLAIM, THAT THE TRIAL COURT LACKED JURISDICTION OF HIS VIOLATION PROCEEDING BECAUSE OF LACK OF DILIGENT EFFORTS TO SECURE HIS PRESENCE TO ANSWER THE WARRANT, IS NOT COGNIZABLE ON HABEAS REVIEW, AND IN ANY EVENT IS MERITLESS

### A. Haynesworth's Third Habeas Claim Is Not Cognizable On Habeas Review

The Supreme Court has reiterated "many times that 'federal habeas corpus relief does

not lie for errors of state law.'" Estelle v. McGuire, 502 U.S. 62, 67, 112 S. Ct. 475, 480 (1991). The

role of a federal habeas court is not to "reexamine state-court determinations on state-law questions.

In conducting habeas review, a federal court is limited to deciding whether a conviction violated the

Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. at 67-68, 112 S.

Ct. at 480; accord, e.g., Harris v. Woods, 05 Civ. 5582, 2006 WL 11405888 at *36-38 & n.42

(S.D.N.Y. May 1, 2006) (Peck, M.J.) (citing cases), report & rec. adopted, 05 Civ. 5582, 2006 WL

19757990 (S.D.N.Y. July 10, 2006); Gittens v. Thomas, 02 Civ. 9435, 2003 WL 21277151 at *2

(S.D.N.Y. May 30, 2003); James v. Artuz, 97 Civ. 2792, 2000 WL 375240 at *1 (S.D.N.Y. Apr. 12,

2000); D'Amico v. Johnson, 92 Civ. 4702, 1993 WL 541658 at *1 (S.D.N.Y. Dec. 23, 1993).

C.P.L. § 410.30 provides that:

> If at any time during the period of a sentence of probation or of conditional discharge
> the court has reasonable cause to believe that the defendant has violated a condition
> of the sentence, it may declare the defendant delinquent and file a written declaration
> of delinquency. Upon such filing, the court must promptly take reasonable and
> appropriate action to cause the defendant to appear before it for the purpose of
> enabling the court to make a final determination with respect to the alleged
> delinquency.

C.P.L. § 410.30

Although using the term "due process" in his petition (Pet. Att.: Haynesworth Aff.
¶ 22), the gist of Haynesworth's third habeas claim is that the state violated C.P.L. § 410.30 because
the District Attorney and the court did not exercise sufficient diligence to bring him before the court
on the violation. Interpretation of C.P.L. § 410.30, however, is purely a state law issue. (Indeed,
before the First Department, Haynesworth never even referred to "due process." See Dkt. No. 9:
Dannelly Aff. Ex. I: Haynesworth Pro Se Supp. 1st Dep't Br. a 10-17.) This Court cannot "re-
examine" the state court's decision, as this claim exclusively rests on state law.

## B.    In Any Event, Haynesworth's Third Habeas Claim Is Meritless

C.P.L. § 410.30 provides that upon a filing of a declaration of delinquency, "the court
must promptly take reasonable and appropriate action to cause the defendant to appear before it for
the purpose of enabling the court to make a final determination with respect to the alleged
delinquency." C.P.L. § 410.30 (quoted in full on page 35 above). Despite the requirements that
C.P.L. § 410.30 places on the court to bring the defendant before it, "delay in the final adjudication
of the defendant's delinquency occasioned by the defendant's own conduct in abandoning his
probation and departing the jurisdiction will not be attributed to the People." People v. Cook, 295
A.D.2d 622, 623, 745 N.Y.S.2d 182, 182-83 (2d Dep't 2002); accord, e.g., People v. Wong, 293
A.D.2d 502, 503, 740 N.Y.S.2d 111, 112-13 (2d Dep't) (denying defendant's claim that "the Supreme
Court lacked jurisdiction to hear the violation of [the] probation matter because the People failed to
use due diligence in attempting to execute [an] arrest warrant" for defendant where "defendant
provided the police, the court, and the probation department with a false name, a false date of birth,

and a false address. Moreover, during the ensuing years, when arrested at various times, he provided different names. It is clear that he purposely misled the authorities as to his identity so as to escape the consequences of his criminal conduct."), appeal denied, 98 N.Y.2d 703, 747 N.Y.S.2d 423 (2002); People v. Diaz, 101 A.D.2d 841, 843, 475 N.Y.S.2d 504 (2d Dep't 1984) (affirming judgment revoking defendant's probation over defendant's argument concerning delay, where defendant "failed to report to his probation officer, absented himself from the treatment facility, attendance at which was a condition of his probation, and left his . . . home for parts unknown. . . . Under such circumstances, any delay in holding a revocation hearing should not be attributed to the Department of Probation."); People Ex Rel. Flores v. Dalsheim, 66 A.D.2d 381, 388, 413 N.Y.S.2d 188, 193-94 (2d Dep't 1979) (A "parolee who fails to report and absconds from supervision cannot assert an immunity from apprehension due to delay alone by the State in finding him. 'Obviously, a violator who has succeeded in evading the authorities is in no position to complain of a delay.'").

On January 7, 1997, a Declaration of Delinquency and warrant were filed as a result of Haynesworth's violation of the terms of his probation and failure to appear before the court. (See page 4 above.) Haynesworth "came to the attention of [Justice Stone] on January 3, 2003, when he was returned on a warrant issued almost six years earlier, on January 7, 1997, by Hon. Herbert Adlerberg for his failure to appear at a Violation of Probation." (See page 7 above.) Justice Stone's opinion clearly sets forth Haynesworth's efforts to avoid return on the delinquency warrant, including use of aliases and different dates of birth. (See pages 9-11 above.) Haynesworth's own actions were the cause of the delay in the adjudication of the violation of probation. As in People v. Wong

H OPIN·HAYNESWORTH

38

(quoted above), Haynesworth's claim that the District Attorney and the court failed to use reasonable

due diligence to bring him before the court on the probation warrant is meritless, as Haynesworth

purposely evaded the authorities.

Haynesworth's third habeas claim should be DENIED.

## CONCLUSION

For the reasons set forth above, Haynesworth's habeas petition should be DENIED

in its entirety and a certificate of appealability should not be issued.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure. the parties shall have ten (10) days from service of this Report to file written objections.

See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the

Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Colleen

McMahon, 500 Pearl Street, Room 640, and to my chambers, 500 Pearl Street, Room 1370. Any

requests for an extension of time for filing objections must be directed to Judge McMahon (with a

courtesy copy to my chambers). Failure to file objections will result in a waiver of those objections

for purposes of appeal. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); IUE AFL-CIO Pension

Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86

(1994); Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d

Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Sec'y of Health & Human Servs.,

892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988);

H OPIN.HAYNESWORTH

39

McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72, 6(a), 6(e).

Dated·     New York, New York
          August 3, 2007

                     Respectfully submitted,

                     **Andrew J. Peck**
                     United States Magistrate Judge

Copies to:    Daniel Haynesworth
              Ashlyn Dannelly, Esq.
              Judge Colleen McMahon